FILED

05/09/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0527

DA 21-0527

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 78

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　v.

ROBIN R. COLLINS,

　　　　Defendant and Appellant.

APPEAL FROM:　District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC-2020-59
Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Nicholas Miller, Jennifer Dwyer, Avignone, Banick & Williams, Bozeman,
Montana

　　　　For Appellee:

　　　　　　Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

　　　　　　Kendra K. Lassiter, Park County Attorney, Livingston, Montana

Submitted on Briefs:　August 17, 2022

Decided:　May 9, 2023

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Robin R. Collins appeals the August 2021 and January 2022 judgments of the Montana Sixth Judicial District Court, Park County, and his post-judgment motion for "Resentencing or Rescission." Collins entered a guilty plea and a "no contest" plea on two counts of felony Criminal Endangerment. We address the following restated issues:

1. *Whether the District Court erroneously concluded that the State did not breach the parties' plea agreement at sentencing?*

2. *Whether the District Court illegally imposed sex offender registration on non-sexual offenses without Collins's consent in violation of § 46-23-512, MCA?*

We affirm in part, reverse in part, and remand to the District Court.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On June 16, 2020, the State charged Collins with one count of Sexual Intercourse Without Consent (SIWC), a felony in violation of § 45-5-503(3)(a), MCA, and two counts of felony Sexual Assault of a minor in violation of § 45-5-502(3), MCA. The charges were based on factual allegations that Collins: (1) repeatedly subjected his 7-year-old foster daughter (A.H.) to sexual intercourse from 2016-2019 (Count 1); (2) repeatedly sexually assaulted his 13 year-old stepdaughter (A.K.) from 2003-2007 (Count 2); and (3) sexually assaulted his 2 year-old step-grandson (C.N.) in 2019 (Count 3). On Collins's motion, the District Court dismissed Count 2 as time-barred by the applicable 10-year statute of limitations.[1] Collins signed a plea agreement on June 7, 2021.

---

[1] *See* § 45-1-205(1)(b), MCA (2015) ("a prosecution for a felony offense under 45-5-502 . . . may be commenced within 10 years after the victim reaches 18 years of age if the victim was less than 18 years of age at the time that the offense occurred.").

2

¶3 In pertinent part, the plea agreement provided that: (1) the State would amend Counts 1 and 3 (SIWC and felony Sexual Assault) to two counts of felony Criminal Endangerment; (2) Collins would plead "no contest" to Amended Count 1 and guilty to Amended Count 3; and (3) "the parties agree[d]" that Collins should "be sentenced to a six-year suspended sentence with registration as a [s]exual [o]ffender during the pendency of his sentence." Collins acknowledged the plea agreement was non-binding pursuant to § 46-12-211(1)(c), MCA, and that he therefore could not withdraw his plea if the court chose not to accept the agreement.

¶4 In the acknowledgment and waiver of rights section of the agreement, Collins stated that he entered into the agreement freely and voluntarily and with full knowledge of its terms, conditions, and consequences. Collins further expressly stated he understood and acknowledged that:

(1) pursuant to § 46-12-211(1)(c), MCA, the court was not bound by the agreement and, in its "sole discretion," could lawfully sentence him to "the maximum punishment authorized for [each] offense" to which he may plead guilty;

(2) if the court "opts not to impose the sentence recommended" under the agreement, he had no right to withdraw his plea;

(3) regardless of the terms of the plea agreement, the victims of the offenses have "a statutory right to make a statement to the [c]ourt" which "the State must honor," and that doing so "is not an attempt by the State to . . . undercut" the plea agreement; and

(4) "any such testimony" by the victims "will not be a basis to withdraw [his] plea."

¶5 At the change of plea hearing on June 7, 2021, Collins acknowledged: (1) the maximum penalties for the offenses; (2) his understanding of the terms and consequences

3

of the plea agreement and the waiver of rights; and (3) his unqualified assent to the terms and consequences of the agreement and resulting changes of plea. The colloquy included the following exchange:

> [Court]: We're going to go through the plea agreement and just make sure that we're all on the same terms with it. . . . [M]y quick reading . . . leaves the Court to conclude that this is not a binding plea agreement. Is that right?
>
> [Counsel]: It's not, your Honor.
>
> [Court]: Okay. So, what I'm getting at there, Mr. Collins, is that essentially what you've done by signing your plea agreement is you've made an agreement with the [S]tate of Montana.
>
> [Collins]: Yes.
>
> [Court]: I'm not a party to the plea agreement, nor am I bound by law to follow the sentence recommended in the plea agreement. Do you understand that concept?
>
> [Collins]: Yes. . . . [my counsel] explained that to me.
>
> [Court]: So, if you go ahead and change your plea, today, and I sentence you to something that's harsher than what's recommended in the plea agreement, you would be stuck with that as your sentence and you wouldn't be able to withdraw your guilty plea. Do you understand that?
>
> [Collins]: Yes, I do.
>
> . . .
>
> [Court]: The parties are agreeing that the sentence should be a six year suspended sentence, with registration as a sex offender during the pendency of the sentence. . . . Is that the agreement that you understood that you made with the [S]tate?
>
> [Collins]: Yes, that's my understanding.

¶6     At the August 2021 sentencing hearing, the District Court noted various matters referenced in the Department of Corrections presentence investigation report (PSI).

4

Neither party presented any witness testimony or other evidence supporting the plea agreement, and Collins declined to personally address the court. However, the State advised that "the victims in this case, and people who've been impacted by this within the family, would like to make a statement to the [c]ourt." The State identified two individuals who had submitted written victim impact statements already included in the PSI. The first was B.N., who was Collins's stepdaughter, and the second was A.K., the victim in Count 2, which was dismissed because it was time-barred. In turn, B.N. and A.K. came forward and read their victim impact statements to the court.

¶7 Both victim impact statements described the irreparable traumatic and life-altering effect of Collins's criminal conduct on the victims and their families. B.N.'s letter further stated that she disagreed with the plea agreement sentencing recommendation based on her belief that Collins was not a low risk to reoffend as found in his psychosexual evaluation. She did not think the agreed sentencing recommendation was sufficient to hold him accountable and protect his victims and other children in the community. A.K.'s letter did not expressly or implicitly comment on the plea agreement but did state A.K.'s belief that Collins had no "remorse or sense of accountability for what he's done to me and, at least, two others."

¶8 Next, the following exchange occurred:

[Court]: [A]t this time, would the State wish to make any argument to the Court, recognizing [that] we're here pursuant to the plea agreement?

[State]: Well, not necessarily an argument, your Honor, we did reach the plea agreement in good faith, so we will abide by our commitment to ask the Court to follow the terms of the plea agreement. Of course, we understand that the Court will take into account the victim impact statements, as well.

Defense counsel then argued in support of the plea agreement, responding in particular to the concerns raised in the victim impact statements. After briefly addressing with counsel the amount of any fine to be included in the sentence, the District Court asked if there was "anything else that the [c]ourt should consider before sentence is pronounced." In response to defense counsel's comments regarding the stated victim concerns, the State made the following comments regarding the plea agreement, victim concerns, and the amount of any accompanying fine that the court might impose:

> I would just like to say, while it's completely understandable . . . why the victims in this case have expressed some dissatisfaction with how the matter was resolved, . . . [w]e . . . who are all in the judicial system loathe to put small children on the stand and put them through having to testify, particularly regarding emotionally traumatic events.
>
> Nonetheless, the only thing that I would say in response to [defense counsel's] comments is that . . . obviously, we appreciate that [Collins has] undertaken the obligation to undergo counseling, that he's agreed to register as a sexual offender when the statutory charges to which he's pleading, or which he's agreed to plead in the plea agreement, don't mandate that, but in the end, . . . he is trying to remediate himself within the community, I get that, but as we've heard, today, from the victims, . . . these are traumas that they[] [will] have to deal with for the remainder of their lives, . . . particularly for Count [2], which was dismissed because of the statute of limitations. . . . [A]s [defense counsel] pointed out, . . . we all get why there is a delay or failure to report sexual crimes on a minor, it is dissatisfying, deeply dissatisfying in terms of perceiving that justice has been had.
>
> So, like I said, *we entered into the plea agreement in good faith, we would ask you to follow it, taking into consideration the victims' impact statements* that have been filed with the Court and read, here, today, into the record, and . . . in terms of capping the amount of the fine,[2] . . . the Court should assess what the Court deems would be an appropriate amount, given the offenses that are at issue in this case. Thank you.

---

[2] The plea agreement left the amount of any fine to the discretion of the court.

(Emphasis added.) The State's comments then triggered the following clarification between defense counsel and the court:

> [Counsel]: I just want to be clear for the record that . . . [by] inviting the Court to consider the victim impact statements . . . and to consider a fine . . . that [the State] is not suggesting to the Court that the plea agreement is invalid or should not be followed, because . . . the State is required to give more than lip service to that agreement. . . . [I]n case there's any further discussion of this, I just wanted to affirm that that is not the case here, that this is not just lip service, and that the State stands by the plea agreement as negotiated.
>
> [Court]: I did not take [the State's] remarks as inviting me to not support the plea agreement.
>
> [Counsel]: Excellent, your Honor, thank you.

¶9 After discussing various sentencing considerations, the District Court concluded that, "having considered everything presented here, . . . the sentence recommended in the plea agreement is wholly inadequate in terms of accountability and punishment." Thus, rather than the relatively short concurrent probationary sentences recommended in the plea agreement, the court sentenced Collins to serve two concurrent 10-year prison terms, with no time suspended, the maximum punishment authorized by law for each offense. The court further stated that, "[b]ecause [he] volunteered to do so" and because it is "certainly . . . necessary to protect the community," the sentencing judgment will "require [Collins] register as a Tier I Sex Offender." The court also imposed a $2,000 fine on each offense and required completion of Phases I and II sex offender treatment before release from prison. On August 24, 2021, the court issued a written judgment which included a notation that, despite the deviation from the plea agreement sentencing recommendation,

7

Collins had nonetheless received the "substantial benefit" of the plea agreement by avoiding the significantly harsher range of punishment associated with the original sex offenses against minors charges.

¶10 In October 2021, Collins filed a post-judgment motion alleging that the State breached the plea agreement by: (1) failing to "fairly or strongly argue for" the plea agreement recommendation at sentencing; (2) emphasizing the traumatic impacts on the victims and their "deep dissatisfaction" with the plea agreement; (3) suggesting that the reasons for the plea agreement "were unjustified" and that the agreement "was unjust"; and (4) "ask[ing] the court to consider the victim[] impact statement[s] when sentencing" Collins. The motion asserted that Collins was entitled, at his election, either to resentencing with specific performance of the agreement from the State or rescission of the plea agreement.[3] After resolution of the jurisdictional problem caused by Collins's immediate filing of a notice of appeal the next day,[4] the District Court denied Collins's motion in January 2022. The court concluded that the State's conduct at sentencing did not undermine and breach the plea agreement. To the contrary, the court found that "the State repeatedly represented that" it entered into the plea agreement "in good faith and encouraged the [c]ourt to abide by [its] terms." The court further noted that it deviated

---

[3] Collins characterized his post-judgment motion for resentencing or rescission of the plea agreement as a timely-raised district court motion for leave to withdraw his no contest and guilty pleas pursuant to § 46-16-105(2), MCA (authorizing motion for withdrawal of guilty or no contest plea "within 1 year after judgment becomes final").

[4] See the January 4, 2022, Order of this Court granting Collins's unopposed motion pursuant to M. R. App. P. 4 for a temporary stay of his appeal and thus remanding for district court disposition of his post-judgment motion.

from the plea agreement sentencing recommendation based on its own independent conclusions regarding the adequacy of the proposed probationary sentence(s) in light of governing statutory sentencing policies, the underlying circumstances of the offenses as described by Collins in the PSI and accompanying psychosexual evaluation, and the victim impact statements. Collins did not object to the imposition of sex offender registration at sentencing or in support of his post-judgment motion for resentencing or rescission of the plea agreement. Collins timely appeals.

## STANDARD OF REVIEW

¶11 Whether a party breached a plea agreement under § 46-12-211, MCA, is a question of law subject to de novo review. *State v. Shepard*, 2010 MT 20, ¶¶ 7-8, 355 Mont. 114, 225 P.3d 1217. District court findings of fact are reviewed for clear error. *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, 114 P.3d 254. Whether a criminal sentence or condition is illegal or exceeds statutory authorization is a question of law subject to de novo review. *State v. McGhee*, 2021 MT 193, ¶ 11, 405 Mont. 121, 492 P.3d 518; *State v. Grana*, 2009 MT 250, ¶ 11, 351 Mont. 499, 213 P.3d 783.

## DISCUSSION

¶12 *1. Whether the District Court erroneously concluded that the State did not breach the parties' plea agreement at sentencing?*

¶13 In both the written plea agreement and at the change of plea hearing, Collins's counsel acknowledged that the proffered plea agreement was not binding. Collins then acknowledged his understanding that the District Court was neither a party to the agreement, "nor . . . bound by law to follow the sentence recommended in the plea

9

agreement." He further acknowledged his understanding that if the court sentenced him to "something that's harsher than what's recommended in the plea agreement, [he] would be stuck with that" and "wouldn't be able to withdraw [his] guilty plea." Thus, as acknowledged by the parties throughout the proceedings, the non-binding plea agreement included an agreed "recommendation . . . for a particular sentence" as authorized by § 46-12-211(1)(c) and (2), MCA.

¶14 Plea agreements are contracts generally subject to applicable contract law standards. *State v. Newbary*, 2020 MT 148, ¶ 18, 400 Mont. 210, 464 P.3d 999. However, defendants waive fundamental state and federal constitutional rights when they are induced to plead guilty by reason of a plea agreement. *See Santobello v. New York*, 404 U.S. 257, 264, 92 S. Ct. 495, 500 (1971) (Douglas, J., concurring); *State v. Rardon*, 2002 MT 345, ¶ 16, 313 Mont. 321, 61 P.3d 132 (*Rardon II*). Consequently, defendants have a substantive right to be treated fairly throughout the plea-bargaining process. *State v. Allen*, 199 Mont. 204, 208, 645 P.2d 380, 382 (1981) (citing *Santobello*, 404 U.S. at 261, 92 S. Ct. at 498). A prosecutor "must meet strict and meticulous standards of both promise and performance relating to plea agreements, because a guilty plea resting on an unfulfilled promise in a plea bargain is involuntary." *Rardon II*, ¶ 18 (internal quotation marks omitted; citation omitted). "Prosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable." *Allen*, 199 Mont. at 209, 645 P.2d at 382.

¶15 The prosecutor must present the case in a "good faith and fair" manner that is not clearly intended or likely to undermine the plea agreement, including the sentencing recommendation made to the court. *Rardon II*, ¶¶ 22-25. A prosecutor cannot pay mere

"lip service"[5] to the agreement by making the agreed sentencing recommendation while presenting the case in a manner intended to persuade the court that the "sentence recommendation should not be accepted." *Rardon II*, ¶¶ 19-22. We have recognized "there are no hard and fast criteria that define when a prosecutor has merely paid lip service to a plea agreement as opposed to when a prosecutor has fairly presented the State's case." *State v. Bartosh*, 2007 MT 59, ¶ 19, 336 Mont. 212, 154 P.3d 58 (citing *Rardon II*, ¶ 21). Each case must be determined individually based on its unique circumstances. *State v. Hill*, 2009 MT 134, ¶ 29, 350 Mont. 296, 207 P.3d 307.

¶16 For example, a prosecutor may not solicit inflammatory statements from victims or witnesses with the intent of influencing the judge to deviate from the plea agreement recommendation. *Rardon II*, ¶¶ 19-22 (prosecutor paid mere "lip service" to agreed sentencing recommendation by fervently eliciting "inflammatory" opinion testimony from victim/witness regarding the recommended sentence length, "reiterating and emphasizing the negative aspects" of defendant's required psychosexual evaluation, and repeating to the court a portion of the PSI stating that a long prison sentence would "motivat[e]" defendant's rehabilitation). Similarly, a prosecutor may not undermine and breach a plea agreement by unnecessarily presenting evidence that contradicts the agreed sentence recommendation or by emphasizing negative information about the defendant without fully explaining the justification for the agreed sentencing recommendation. *See State v.*

---

[5] "Lip service" is an idiom referring to "service consisting of only avowed [verbal] expressions of adherence, devotion or allegiance; service by words but not by deeds." *State v. Hill*, 2009 MT 134, ¶ 29 n.3, 350 Mont. 296, 207 P.3d 307 (citation omitted).

11

*LaMere*, 272 Mont. 355, 357-60, 900 P.2d 926, 927-29 (1995) (prosecutor did not adequately support the plea agreement when they gave no explanation for the recommended deferred sentence and then emphasized defendant's negative characteristics such as his alcohol abuse, repeated failure to complete anything he starts, and lack of desire to seek alcohol treatment); *State v. Bowley*, 282 Mont. 298, 311-12, 938 P.2d 592, 599-600 (1997) (prosecutor breached plea agreement by initially making agreed sentencing recommendation before "effectively endors[ing]" a different sentence recommendation made by the probation officer).

¶17     In contrast, within the scope of information required or authorized by statute for the court to consider at sentencing,[6] the prosecutor may properly: (1) note independent victim statements, concerns, and opinions regarding the circumstances of the crime, its impact, and the appropriate sentence; (2) acknowledge or note the defendant's criminal and relevant personal history, the circumstances of the offense, charges previously dismissed or amended as part of the plea agreement, and different sentencing recommendations and considerations independently made by the probation officer in the PSI report; and (3) acknowledge any similar information, opinions, or recommendations made by third-party evaluators regarding any psychosexual or mental health evaluations and reports. *See State v. Ellison*, 2017 MT 88, ¶¶ 18, 22, 387 Mont. 243, 393 P.3d 192; *State v. McDowell*, 2011 MT 75, ¶¶ 16-21, 360 Mont. 83, 253 P.3d 812; *State v. Manywhitehorses*, 2010 MT 225,

---

[6] *See* § 46-18-111(1)(a), MCA (when court may or must order PSI, and requiring court to consider PSI when ordered); § 46-18-112, MCA ("Content of presentence investigation report"); § 46-18-115(4), MCA (right of "victim to present a statement concerning the effects of the crime on the victim, the circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion regarding appropriate sentence").

¶¶ 14-16, 358 Mont. 46, 243 P.3d 412; *Hill*, ¶¶ 27-33; *State v. Rardon*, 2005 MT 129, ¶¶ 17-20, 327 Mont. 228, 115 P.3d 182 (*Rardon III*).  However, the prosecutor may do so only if not expressly prohibited by the terms of the plea agreement, the information is relevant to the sentencing, and the case is presented in a fair manner not likely to undermine the plea agreement by influencing the court to deviate from the sentence recommendation. *See, e.g., McDowell*, ¶¶ 20-21, 24 (no breach where prosecutor neutrally presented victim's testimony, appropriately pointed out facts in the PSI report supporting the recommended sentence despite the report recommending a different sentence, and recommended probation conditions that were not prohibited by the agreement); *Manywhitehorses*, ¶ 16 (no breach where prosecutor made agreed sentencing recommendation and presented evidence of the crime which indicated defendant was originally charged with deliberate homicide when that evidence was not expressly precluded by the plea agreement and was relevant to the circumstances of the victim's death and the defendant's history); *Hill*, ¶¶ 29-30 (no breach where prosecutor pointed out a victim impact statement included in PSI report regarding a dismissed sexual abuse charge because court was already aware of the circumstances underlying that charge and may properly consider such evidence when relevant); *Bowley*, 282 Mont. at 311-12, 938 P.2d at 600 (prosecutor may neutrally reference a different sentencing recommendation made by probation officer in PSI; however, effectively endorsing that different recommendation constitutes a breach).

¶18     Here, Collins asserts that the State merely paid "lip service" to the agreed sentencing recommendation by noting in "a single sentence" of its initial sentencing presentation that it was required to follow the plea agreement and did not provide any further explanation.

He asserts the State thus breached the agreement by failing to "fairly or strongly argue for" it and then affirmatively undermining it by repeatedly emphasizing to the court the traumatic impact of the crimes on the victims and the victims' disagreement with the agreed recommendation. As a threshold matter, Collins correctly points out that the prosecutor neither verbally articulated the agreed sentencing recommendation nor provided any explanation for it during the State's initial recommendation at sentencing.

¶19 We have previously addressed a similar situation where the prosecutor did not "specifically voice" or explain the agreed sentencing recommendation at the sentencing hearing. *State v. Brown*, 193 Mont. 15, 17-18, 629 P.2d 777, 778 (1981). We noted that the plea agreement was filed with the district court a month before the hearing and that the court "acknowledged the existence of [the] agreement" throughout the sentencing hearing with "particular mention of the State's recommendation" when the court imposed the defendant's sentence. *Brown*, 193 Mont. at 17, 629 P.2d at 778. As a result, we held the State satisfied its "obligation under the agreement" because it was "evident" that the court was already "fully apprised" of the plea agreement and "was aware of" it during sentencing. *Brown*, 193 Mont. at 17-18, 629 P.2d at 778.

¶20 Likewise, here the plea agreement was filed long before the sentencing hearing, and the records of both the change of plea hearing and the sentencing hearing demonstrate that the District Court was aware of the plea agreement terms, including the agreed sentencing recommendation. During the sentencing hearing, including when imposing the sentence, the court questioned whether any further explanation or argument was necessary, asking:

14

[A]t this time, would the State wish to make any argument to the Court, recognizing [that] we're here pursuant to the plea agreement?

Evidently aware of the court's familiarity with the plea agreement, the prosecutor responded:

Well, not necessarily an argument, your Honor. We did reach the plea agreement in good faith, so we will abide by our commitment to ask the Court to follow the terms of the plea agreement.

¶21 As implicitly recognized in *Brown*, a prosecutor is not necessarily required to enthusiastically recommend or explain the sentence provided they "act[] in good faith and [do] not undermine the agreement." *State v. Bullplume*, 2011 MT 40, ¶ 16, 359 Mont. 289, 251 P.3d 114. Here the State attested that it entered into the plea agreement in "good faith," unequivocally stood by its "commitment," and thus "ask[ed] the Court to follow the terms of the plea agreement." Further, the State did not recommend or otherwise support a different sentence during the hearing. Under these circumstances, we hold that the State sincerely and in good faith satisfied the express terms of the plea agreement.

¶22 However, the prosecutor must also present the State's case in a manner that does not undermine the agreed recommendation through unnecessary comment or conduct having no legitimate purpose other than to influence the court to deviate from the non-binding recommendation. Collins asserts that the prosecutor breached the plea agreement by "repeatedly directing the court" to the victims' dissatisfaction with the plea agreement, emphasizing that the agreed resolution "was unjust," "interject[ing] a lengthy statement highlighting the inadequacy of the plea agreement," repeatedly referencing the emotional trauma suffered by the victims, asking the court to consider the victim impact

15

statements, and by characterizing A.K. as a victim of a crime when the State dismissed that count pursuant to the applicable statute of limitations. Collins argues this conduct is analogous to the prosecutorial conduct we held breached a plea agreement in *Rardon II*. However, Collins's assertions are wholly unsupported by the sentencing hearing record.

¶23 The record shows that the prosecutor did not ask the court to consider the victim impact statements, repeatedly direct the court to the victims' dissatisfaction with the plea agreement, or otherwise unnecessarily refer to either of those matters. As in *McDowell*, *Hill*, and *Rardon III*, the prosecutor's acknowledgment of the District Court's duty to consider the victim impact statements previously submitted and included in the PSI, notification to the court that two individuals desired to read their respective victim impact statements at sentencing, and acknowledgment of those individuals' adverse opinions and concerns regarding the plea agreement recommendation were all within the authorized scope of information specified by statute for court consideration.

¶24 As to the prosecutor's statement that the originally charged Count 2 was dismissed through no fault of the alleged victim, Collins neither objected below, nor asserts on appeal here, that the victim impact statement submitted and read by the alleged victim was either improperly included in the PSI or improperly read by her at sentencing. As a matter of record, the District Court was already aware that the State dismissed that count based on the statute of limitations.

¶25 Perhaps most significantly, the record clearly reflects that the prosecutor's supplemental comments regarding the victim impact statements, as asserted by defense counsel and acknowledged by the court, were manifestly intended to *support* the plea

16

agreement in a manner respectful to the stated victim concerns and responsive to defense counsel's sentencing argument. Further, we disagree with Collins that the prosecutor's supplemental comments suggested to the court that the agreement was unjustifiable. Fairly read in context, the prosecutor here made no statement asserting, much less emphasizing, that the agreed sentencing recommendation was "unjust." Collins specifically takes issue with the prosecutor's reference to the dismissed count where she noted that "as [defense counsel] pointed out, . . . we all get why there is a delay or failure to report sexual crimes on a minor, it is dissatisfying, deeply dissatisfying in terms of perceiving that justice has been had." However, as the prosecutor made clear, she was merely responding to a statement made by defense counsel. While arguing for the plea agreement, defense counsel brought up the impact statement of A.K.—the alleged victim of the dismissed count—and stated "nothing that I say, here, could possibly erase those experiences from [A.K.'s] life or the memories . . . no one in this courtroom, or . . . who [has] dealt with sexual offending, has any question about why [A.K.] didn't come forth as a child." Defense counsel then acknowledged that "the fact that [A.K.'s] charge was dismissed, due to statutory limitation considerations, means that [Collins] can't be sentenced for those actions, but the Court can obviously consider them." Read in context, the prosecutor's comments were not asserting the resolution of the dismissed charge was "unjust." Instead, she merely agreed with defense counsel's discussion of that charge and echoed defense counsel's statement affirming the court's ability to consider the conduct underlying that charge.

¶26    Under these circumstances, the prosecutor neither implicitly nor effectively endorsed the stated victim concerns regarding the plea agreement recommendation, nor

17

acknowledged the statements of other victims in an unnecessary, irrelevant, repetitive, or inflammatory manner with no legitimate purpose other than to undermine the plea agreement. After careful review of the record, we conclude that the State adequately supported the agreed sentencing recommendation and therefore did not undermine and breach the plea agreement as alleged by Collins.

¶27    *2. Whether the District Court illegally imposed sex offender registration on non-sexual offenses without Collins's consent in violation of § 46-23-512, MCA?*

¶28    Collins asserts that the District Court illegally imposed sex offender registration as a condition of his sentence. The Sexual or Violent Offender Registration Act (SVORA) imposes a registration requirement on defendants convicted of a "sexual offense" as defined by § 46-23-502(9), MCA. Sections 46-23-504, 46-23-506, MCA. A sentencing court may only impose the SVORA registration requirement when specifically authorized by statute. *State v. Hastings*, 2007 MT 294, ¶ 19, 340 Mont. 1, 171 P.3d 726. When a defendant is convicted of an offense that does not require SVORA registration, § 46-23-512, MCA, provides the only statutory authority by which a sentencing court can legally impose that requirement. Section 46-23-512, MCA expressly provides that:

> A defendant convicted of an offense that would otherwise not be subject to [SVORA] registration under this part may agree to comply with the registration requirements of this part as part of a plea agreement, and a court accepting the plea agreement may order the defendant to comply with this part.

¶29    Collins asserts that under the express language of § 46-23-512, MCA, the District Court could only legally require SVORA registration if he agreed to register as part of his plea agreement and the District Court accepted that plea agreement. In Collins's plea

agreement with the State, he agreed to enter pleas of guilty and no contest to the two amended counts of Criminal Endangerment and the State agreed to recommend concurrent six-year probationary sentences on the amended charges. While Criminal Endangerment is not defined as a "sexual offense" triggering mandatory SVORA registration under § 46-23-502(9), MCA, Collins nevertheless agreed to be subject to SVORA registration as part of his plea agreement with the State. However, Collins argues that the District Court "unequivocally rejected" the plea agreement by imposing two consecutive ten-year prison terms on the amended offenses instead of the recommended six-year suspended sentence. According to Collins, the agreed "sentencing recommendation was the only meaningful aspect of the plea agreement that called for any acceptance or rejection by the court," as the State had discretion over amending the charges. Collins notes that in rejecting the recommended sentence, the District Court stated the recommendation was "wholly inadequate in terms of accountability and punishment," and that it "failed to meet the sentencing policies set by the legislature." Accordingly, Collins asserts the District Court did not accept the plea agreement as expressly required by § 46-23-512, MCA, and was therefore unauthorized to impose the SVORA registration requirement.

¶30 The State argues that § 46-23-512, MCA, authorized the District Court to impose SVORA registration because Collins agreed to that condition in the plea agreement and the District Court accepted that plea agreement. The State asserts that the non-binding plea bargain was an agreement between Collins and the State to which the District Court was not a party. Collins understood that the District Court was not bound by the sentencing recommendation and could impose any legal sentence. As such, the State maintains the

District Court's deviation from the recommended sentence did not constitute a rejection of the plea agreement.

¶31 The narrow purpose of statutory construction is to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Courts first attempt to construe a statute "in accordance with the plain meaning of its express language in context of the larger statutory scheme in which the Legislature inserted it." *Mt. Water Co. v. Mont. Dep't of Revenue*, 2020 MT 194, ¶ 27, 400 Mont. 484, 469 P.3d 136. If the language of a statute is clear and unambiguous, no further interpretation is required. *State v. Goebel*, 2001 MT 73, ¶ 16, 305 Mont. 53, 31 P.3d 335 (citation omitted). In that circumstance, "the statute speaks for itself and there is nothing left for the court to construe." *State v. Hubbard*, 200 Mont. 106, 111, 649 P.2d 1331, 1333 (1982).

¶32 We agree with Collins that the District Court did not have the authority to impose SVORA registration as a condition of his sentence. We have repeatedly held that "courts do not have the power to impose a criminal sentence unless authorized by a specific grant of statutory authority." *State v. Burch*, 2008 MT 118, ¶ 23, 342 Mont. 499, 182 P.3d 66. Here, § 46-23-512, MCA, supplies the only statutory authority permitting a court to impose SVORA registration on a defendant not otherwise subject to that requirement. Section 46-23-512, MCA, plainly and unambiguously provides that "a court accepting the plea agreement may order the defendant to comply" with SVORA registration. This express language does not qualify, modify, distinguish, or in any way limit the plea agreements to which it applies. Yet under the State's interpretation of § 46-23-512, MCA, if a defendant

agrees to SVORA registration in a plea agreement, the sentencing court may impose that requirement regardless of whether it deviates from the plea agreement in any respect. This interpretation renders superfluous the provision of § 46-23-512, MCA, requiring the court to "accept[] the plea agreement" before requiring SVORA registration. To give full effect to every word in § 46-23-512, MCA, a sentencing court's deviation from a plea agreement recommendation must constitute a rejection of the plea agreement. *See State v. Ohl*, 2022 MT 241, ¶ 11, 411 Mont. 52, 521 P.3d 759 (citation omitted) (courts avoid interpreting statutes in a manner "that renders any sections of the statute superfluous and does not give effect to all of the words used").

¶33    The State briefly cites to *Grana* to support its contention that a court can impose SVORA registration on a defendant if the defendant agreed to that requirement in a plea bargain. In *Grana*, a defendant was charged with seven counts of burglary but agreed to plead guilty to three counts of burglary in return for dismissal of the other four counts and a specific non-binding sentencing recommendation by the State. *Grana*, ¶¶ 5-7. The plea agreement included an express provision that the defendant "would register as a Level II sexual offender," subject to his retained right to "oppose the registration requirement and/or the Level II designation." *Grana*, ¶ 6. The court sentenced the defendant per the plea agreement recommendation and, over his objection, ordered him to register as a Level II sex offender. *Grana*, ¶¶ 6-8. The court subsequently revoked the original sentence, but the resentencing judgment was silent as to SVORA registration. When the defendant later sought a declaratory ruling on the registration requirement, the court ruled that the new sentence did *not* require SVORA registration. The court later revoked this sentence

following new probation violations and resentenced the defendant, but unlike before, required him to register as a sex offender. *Grana*, ¶¶ 8-10.

¶34 We concluded the court properly imposed SVORA registration on the defendant based on his express consent to that requirement and because he obtained the full benefit of the plea bargain. First, the defendant's plea agreement expressly permitted the court to require SVORA registration; it also allowed him to argue against that requirement. As a result of this plea agreement term, we concluded the defendant effectively "conceded that the District Court could require him to register as a sexual offender if his objection to registration did not prevail." *Grana*, ¶ 13. Second, we held that the defendant "obtained the full benefit of the plea bargain" because "four of the original seven burglary charges" were dismissed. *Grana*, ¶ 13. We thus held that § 46-23-512, MCA, authorized the court to impose SVORA registration on the defendant. *Grana*, ¶ 14.

¶35 The circumstances here are distinguishable from those in *Grana*. Critically, the plea agreement in *Grana* explicitly contemplated the defendant's ultimate sentence. The defendant agreed that if he unsuccessfully argued against SVORA registration, the court could still require his registration. *Grana*, ¶ 13. Therefore, in imposing SVORA registration over the defendant's objection, the court still accepted the full plea agreement and retained authority to lawfully impose that condition pursuant to the express language of § 46-23-512, MCA. Conversely, the plea agreement between Collins and the State has no similar provision; Collins consented to SVORA registration as a term of the plea agreement but nothing further. While he acknowledged the agreement could be rejected by the court pursuant to § 46-12-211(1)(c), MCA, Collins did not agree to SVORA

22

registration if the agreement was rejected.  Here, Collins's consent to SVORA registration was a term in an agreement that the court did not accept.

¶36    Under the express language of § 46-23-512, MCA, the District Court was only authorized to impose SVORA registration if two conditions were met: (1) Collins "agree[d] to comply with the registration requirements . . . as part of a plea agreement," and (2) the "court accept[ed] the plea agreement."  By deviating from the plea agreement's sentencing recommendation, the District Court rejected the plea agreement.  Because the second condition requiring the court to accept the plea agreement was not met, § 46-23-512, MCA, did not supply the court with the authority to impose SVORA registration on Collins.  We conclude that under § 46-23-512, MCA, the District Court unlawfully imposed sex offender registration on Collins.

## CONCLUSION

¶37    The District Court correctly concluded that the State did not breach the plea agreement.  However, the District Court unlawfully imposed sex offender registration on Collins under § 46-23-512, MCA; therefore, we remand for the limited purpose of striking the requirement that Collins register as a sex offender.

¶38    Affirmed in part and reversed in part.

/S/ LAURIE McKINNON

We Concur:

/S/ INGRID GUSTAFSON
/S/ JIM RICE
/S/ JAMES JEREMIAH SHEA

23

Justice Dirk Sandefur specially concurring in part and dissenting in part.

¶39    As to Issue 1 (i.e., whether the District Court erroneously concluded that the State did not breach the parties' plea agreement at sentencing), I concur with the Court's ultimate holding, and much of its underlying legal analysis supporting that holding. However, I am disappointed, and frankly astonished, by the Majority's unwillingness, *consistent with the precedent cited here and in the Court's Opinion*, to finally reconcile and synthesize for clarity the longstanding and well-settled recognition by this Court, and the Supreme Court, that criminal plea agreements are fundamentally contracts generally governed by applicable contract law principles, except to the extent that they involve waivers of fundamental federal and state constitutional rights which, as a matter of federal and state constitutional due process uniquely applicable in the criminal law context, require a stricter and more stringent standard of State performance of express contract terms and adherence to the implied covenant of good faith and fair dealing implied as a matter of law in all contracts. Instead, the Majority essentially puts forth what can only be characterized as an *ad hoc* due process analysis which only preliminarily pays lip service to guiding contract law that is entirely consistent with the pertinent constitutional due process principles. The Court's reasoning is thus manifestly lacking in the analytical consistency and clarity required for consistent and predicable application to the varying fact patterns that will continue to arise in individual cases going forward.

¶40    As to Issue 2, I dissent from the Majority holding that the District Court illegally imposed sex offender registration on non-sexual offenses without Collins' consent in violation of § 46-23-512, MCA. The Court's holding is patently erroneous insofar that it

24

conveniently fails to recognize and preserve the fundamental distinction between the nature and effect of binding and non-binding plea agreements under § 46-12-211, MCA, and thereby avoids having to address the obvious current state of the applicable Montana statutory law—when it enacted the pertinent provision of the Montana Sexual and Violent Offender Registration Act, § 46-23-512, MCA (1999) (authorizing imposition of sexual or violent offender registration on conviction on a non-sexual or -violent offense upon offender plea agreement consent), the Legislature in its narrow focus failed to recognize the pre-existing statutory distinction between binding and non-binding plea agreements under § 46-12-211, MCA (1991). As a result, the Majority fails to recognize that the District Court's deviation from the non-binding sentencing recommendation in the non-binding plea agreement neither constituted a rejection, nor invalidation, of the other negotiated and still valid and enforceable terms of the agreement such as, at issue here, Collins' consent to be subject to sex offender registration.

## DISCUSSION

¶41 1. *Whether the District Court erroneously concluded that the State did not breach the parties' plea agreement at sentencing?*

¶42 Despite seemingly ambiguous references to § 46-12-211(1)(b) and (c), MCA, in the plea agreement and acknowledgment and waiver of rights sections of the combined written agreement, Collins' counsel acknowledged to the District Court at the change of plea hearing that the proffered plea agreement was "*not* a binding plea agreement." Collins then acknowledged his understanding that the court was neither a party to the agreement, "nor . . . bound by law to follow the sentence *recommended* in the plea agreement."

25

(Emphasis added.) He further acknowledged his understanding that if the court sentenced him to "*something that's harsher* than what's *recommended* in the plea agreement, [he] would be stuck with that" and "*wouldn't be able to withdraw* [*his*] *guilty plea*." (Emphasis added.) Thus, as acknowledged by Collins, his counsel, and the District Court at the change of plea hearing, again by the court and counsel for the parties at the ensuing sentencing hearing, and yet again by Collins on appeal, the combined written agreement at issue was a non-binding plea agreement including, *inter alia*, an agreed "*recommendation . . .* for a particular sentence" as authorized and in accordance with § 46-12-211(1)(c) and (2), MCA.

¶43 Within the framework of § 46-12-211, MCA (authorizing plea agreements), plea agreements are contracts generally subject to applicable contract law standards. *State v. Newbary*, 2020 MT 148, ¶ 18, 400 Mont. 210, 464 P.3d 999; *State v. Hill*, 2009 MT 134, ¶ 49, 350 Mont. 296, 207 P.3d 307; *State v. Rardon (Rardon II)*, 2002 MT 345, ¶ 18, 313 Mont. 321, 61 P.3d 132 (citing *State v. Munoz*, 2001 MT 85, ¶ 14, 305 Mont. 139, 23 P.3d 922); *State v. Keys*, 1999 MT 10, ¶ 18, 293 Mont. 81, 973 P.2d 812; *State v. Dinndorf*, 202 Mont. 308, 311, 658 P.2d 372, 373 (1983) (citing *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979)). In this case, there is no assertion, or record basis upon which to conclude, that the subject plea agreement was void or voidable due to lack of mutual consideration, lack of mutual and voluntary assent, unlawful object or provision, or fraud, mutual mistake of fact, or mistake of law. *See* §§ 28-2-101, -102, -301, -303, -401, -409, and -410, MCA (in re contract formation requirements and defects).[1] The narrow issue

---

[1] *See similarly* § 46-12-204(2), MCA (court may not accept a guilty or nolo plea "without first determining that the plea is voluntary and not the result of force or threats or . . . promises apart

26

presented here is whether, post-formation, the State breached an express or implied contract term or duty as alleged.

¶44 A plea agreement is a special type of contract involving, *inter alia*, a defendant's waiver of fundamental state and federal constitutional trial rights induced by prosecutor promises regarding sentencing and related matters. *See* §§ 46-12-210(1)(c), (e), and -211(1), MCA (plea acceptance requirements and plea agreement authorization); *Santobello v. New York*, 404 U.S. 257, 264, 92 S. Ct. 495, 500 (1971) (Douglas, J., concurring—internal citations omitted). Consequently, unlike other types of contracts where only a *material* breach relieves the non-breaching party of the reciprocal contract duty to perform as reciprocally promised, *see Davidson v. Barstad*, 2019 MT 48, ¶ 22, 395 Mont. 1, 435 P.3d 640 (material breach of contract affords non-breaching party the option of either rescinding the contract without requirement for reciprocal performance or enforcing the contract by its terms at law or in equity), prosecutors must, regardless of any inadvertent or good faith error or oversight, strictly and meticulously perform and fulfill all express and implied plea agreement promises and obligations which were "in any significant degree . . . part of the inducement or consideration" for the defendant's change of plea. *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499. *Accord State v. Allen (Allen I)*, 197

---

from [a] plea agreement"); *State v. Radi*, 250 Mont. 155, 159, 818 P.2d 1203, 1206 (1991) (guilty pleas are constitutionally valid only if knowing, voluntary, and intelligent with sufficient awareness of all relevant circumstances, any available alternative courses of action, and the likely consequences of the change of plea—citing *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970)); *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970).

Mont. 64, 68-69, 645 P.2d 380, 382 (1981) (quoting *Santobello*).[2]  Accordingly, for purposes of the contract law analysis, a prosecutor breach of a plea agreement generally constitutes a material breach of the agreement which, absent an affirmative prosecutor showing by clear and convincing evidence that the elected remedy would result in a fundamental miscarriage of justice, entitles a non-breaching defendant the option of choosing one of two different remedies for the breach—specific performance of the agreement or rescission and withdrawal of his or her adverse plea.[3]  *Munoz*, ¶¶ 13-16 and 38 (choice of remedies is a "safeguard" of "defendant's due process rights"—internal citations omitted); *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499 (prosecutor breach of any promise or obligation that was in any significant degree part of the inducement or consideration for the defendant's change of plea generally precludes prosecutor argument that the breach was "immaterial").  *Accord State v. Schoonover*, 1999 MT 7, ¶ 16, 293

---

[2] We have long recognized and applied the *Santobello* requirement for strict prosecutor performance and fulfillment of plea agreement promises and obligations.  *See, e.g.*, *State v. Smietanka*, 2008 MT 357, ¶ 13, 346 Mont. 353, 195 P.3d 797 (citing *State v. Bartosh*, 2007 MT 59, ¶ 19, 336 Mont. 212, 154 P.3d 58); *Bartosh*, ¶ 19 (citing *State v. Rardon* (*Rardon III*), 2005 MT 129, ¶ 18, 327 Mont. 228, 115 P.3d 182 (citing *Rardon II*)); *Rardon II*, ¶ 18 (citing *State v. LaMere*, 272 Mont. 355, 359-60, 900 P.2d 926, 929 (1995) (quoting *Allen I*)); *State v. Rardon* (*Rardon I*), 1999 MT 220, ¶ 14, 296 Mont. 19, 986 P.2d 424 (quoting *State v. Bowley*, 282 Mont. 298, 310-11, 938 P.2d 592, 599 (1997) (quoting *Allen I*)), *overruled on other grounds by Munoz*, ¶ 28; *State v. Sanders*, 1999 MT 136, ¶ 27, 294 Mont. 539, 982 P.2d 1015 (quoting *Allen I*), *overruled on other grounds by State v. Deserly*, 2008 MT 242, ¶ 12 n.1, 344 Mont. 468, 188 P.3d 1057.

[3] *See also Rardon I*, ¶ 13 (specific performance entitles defendant to resentencing by different judge at which time prosecutor must fully perform as promised/agreed in the plea agreement). *Compare Munoz*, ¶ 18 (rescission of the plea agreement reinstates defendant to pre-change of plea/rights-waiver status quo); *Cady v. Burton*, 257 Mont. 529, 538, 851 P.2d 1047, 1053 (1993) (rescission returns parties "to the same position they would have occupied had they not entered into the contract").  *See also* § 28-2-1701(2), MCA (contract extinguishment by rescission).

Mont. 54, 973 P.2d 230 ("[w]e decline the State's implicit invitation to begin parsing the promises made by a prosecutor in a plea agreement to determine how 'big' a breach of contract the prosecutor will be permitted before the breach" subjects the agreement to "vacation"/rescission); *State v. Warner*, 2015 MT 230, ¶ 14, 380 Mont. 273, 354 P.3d 620 ("choice of remedy is in the hands of the [non-breaching] defendant" because strict application of contract law to plea agreements "must give way to concerns about a defendant's due process rights" where necessary—citing *Munoz*, ¶¶ 14-15).

¶45    Building on the *Santobello* requirement for strict prosecutor performance of plea agreement promises, courts, including this Court, have further extrapolated that a prosecutor breach of a plea agreement in turn retroactively renders the defendant's related change of plea "involuntary."  *See, e.g.*, *Allen I*, 197 Mont. at 69, 645 P.2d at 382 (citing *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973)); *San Pedro v. United States*, 79 F.3d 1065, 1077 (11th Cir. 1996) (Goettel, J., dissenting); *United States v. Salcido-Contreras*, 990 F.2d 51, 52 (2d Cir. 1993); *United States v. Read*, 778 F.2d 1437, 1440-41 (9th Cir. 1985).  *Accord Warner*, ¶ 13 (quoting *State v. Bowley*, 282 Mont. 298, 938 P.2d 592 (1997)); *Rardon II*, ¶ 18 (quoting *State v. LaMere*, 272 Mont. 355, 357-60, 900 P.2d 926, 927-29 (1995) (quoting *Allen I*)); *State v. Rardon (Rardon I)*, 1999 MT 220, ¶ 14, 296 Mont. 19, 986 P.2d 424 (quoting *Bowley*); *State v. Sanders*, 1999 MT 136, ¶ 27, 294 Mont. 539, 982 P.2d 1015 (quoting *Allen I*); *Schoonover*, ¶¶ 13-16 (citing *Bowley)*; *Bowley*, 282 Mont. at 310-12, 938 P.2d at 599-600 (quoting *Allen I*).  However, *Santobello* said no such thing.  It held only that the constitutional waiver and adjudicative effect of plea agreements in turn requires strict government performance and an appropriate

29

corrective remedy in the event of a breach.  *See Santobello*, 404 U.S. at 262, 92 S. Ct. at 499.  As since similarly recognized by the Supreme Court:

> [T]here is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary. . . . [P]lea bargains are essentially contracts. When the consideration for a contract fails—that is, when one of the exchanged promises is not kept—we do not say that the voluntary bilateral consent to the contract never existed, so that it is automatically and utterly void; we say that the contract was broken.  See 23 R. Lord, Williston on Contracts § 63.1 (4th ed. 2002). . . .  The party injured by the breach will generally be entitled to some remedy, . . . but that is not the same thing as saying the contract was never validly concluded. . . .  When a defendant agrees to a plea bargain, the Government takes on certain obligations.  If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission . . . [or] specific performance of the contract.  In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary.  It is precisely *because* the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain.

*Puckett v. United States*, 556 U.S. 129, 136-38, 129 S. Ct. 1423, 1429-30 (2009) (various internal citations omitted—emphasis original).  *Accord Newbary*, ¶¶ 17-21 (later repeal of statutory authorization of correctional boot camp program neither effected retroactive breach of a prior plea agreement sentencing recommendation for such placement, nor retroactively rendered the defendant's prior plea-agreement-based guilty plea involuntary).

*See similarly Puckett*, 556 U.S. at 138 n.1, 129 S. Ct. at 1430 ("disavow[ing]" quoted language in *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970) (endorsing overbroad statement that all guilty pleas "induced by" prosecutor "misrepresentation (including unfulfilled or unfulfillable promises)" are necessarily invalidated even if the misrepresentation did not occur at the time of contract formation), and *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S. Ct. 2543, 2547 (1984) (stating that a

post-formation prosecutor breach of an executed plea agreement retroactively invalidates the defendant's assent and consideration to plead guilty because the plea was made "on a false premise")). Accordingly, I would partially overrule *Allen I* and progeny to the extent that they assert or stand for the proposition that a post-formation prosecutor breach of a plea agreement retroactively renders the related change of plea unknowing or involuntary.

¶46    As with other contracts, a breach of a plea agreement may result either from a breach of an express term of the agreement or a breach of a term or duty implied in the contract as a matter of law. *See, e.g.*, *Rardon II*, ¶ 22 (breach of plea agreement based on prosecutorial conduct undercutting or undermining the agreement despite technical compliance with express terms of agreement); *Story v. City of Bozeman*, 242 Mont. 436, 448-50, 791 P.2d 767, 774-75 (1990) (contract breach may result either from breach of an express contract term or breach of the covenant of good faith and fair dealing implied by law in every contract). In addition to the contract duty to fully perform or satisfy all promises and obligations expressly provided in a plea agreement, a criminal prosecutor thus also has an implied duty to perform as promised in a "good faith and fair" manner not manifestly intended or likely to undermine the express terms of the agreement including, *inter alia*, the agreed sentencing recommendation to the court. *See Rardon II*, ¶¶ 22-25. *Accord, e.g.*, *State v. Ellison*, 2017 MT 88, ¶ 15, 387 Mont. 243, 393 P.3d 192 (citing *State v. Bartosh*, 2007 MT 59, ¶ 19, 336 Mont. 212, 154 P.3d 58); *State v. Rardon* (*Rardon III*), 2005 MT 129, ¶¶ 18-19, 327 Mont. 228, 115 P.3d 182 (citing *Rardon II*, ¶ 22); *Allen I*, 197 Mont. at 68, 645 P.2d at 382. In the unique and special context of criminal plea agreements which are subject to both contract law and constitutional due process standards and limitations,

31

the prosecutor's implied covenant of good faith and fundamental fairness derives both from the covenant of good faith and fair dealing implied in all contracts as a matter of law, as well as the defendant's fundamental state and federal constitutional due process right to fundamental fairness in the proceedings. *See* § 28-1-211, MCA (implied contract covenant of good faith and fair dealing[4]); *Warner*, ¶ 14 (strict application of contract law to plea agreements "must give way" where necessary to protect the "defendant's due process rights"); *State v. McDowell*, 2011 MT 75, ¶ 23, 360 Mont. 83, 253 P.3d 812 ("[i]n order to ensure that the plea bargain process is fair to the defendant, there must be safeguards to insure the defendant what is reasonably due in the circumstances"—quoting *Rardon I*, ¶ 14, internal punctuation omitted); *Sanders*, ¶ 27 ("fundamental fairness dictates that the prosecutors meticulously abide by the terms of a plea agreement"—citing *Allen I*), *overruled on other grounds by State v. Deserly*, 2008 MT 242, ¶ 12 n.1, 344 Mont. 468, 188 P.3d 1057; *State v. Allen (Allen II)*, __ Mont __, __, 685 P.2d 333, 335 (1982) (plea agreements implicate constitutional rights including "right to fundamental fairness embraced within substantive due process guarantees"—citation omitted); *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499 (noting that the requirement for strict prosecutor performance and fulfillment of plea agreement promises is a "safeguard" necessitated by the waiver and

---

[4] *See also Story*, 242 Mont. at 448-50, 791 P.2d at 774-75 (implied contract covenant of good faith and fair dealing derives from the "justified expectation" of each party "that the other will act in a reasonable manner in [the] performance" of express contract promises or duties—breach does not necessarily require breach of an express contract term—only proof that offending party acted in a dishonest, unfair, or unreasonable manner that undermined the express terms thereby denying non-breaching party the full benefit of the bargain). *See also Farris v. Hutchinson*, 254 Mont. 334, 338-39, 838 P.2d 374, 376-77 (1992) (justified expectations of a party may not, however, contradict or exceed the express terms of the contract).

"adjudicative" effect of a guilty plea in re a defendant's fundamental constitutional rights and liberty interest).[5]

¶47 A breach of the prosecutor's implied duty of good faith and fundamental fairness thus occurs if he or she merely gives "lip service" to the agreement by making the agreed sentencing recommendation[6] but then otherwise undermines it in an unnecessary or irrelevant manner manifestly intended or likely to encourage or influence the court to reject or deviate from the plea agreement. *See McDowell*, ¶ 14 (citing *State v. Bullplume*, 2011 MT 40, ¶ 13, 359 Mont. 289, 251 P.3d 114); *Ellison*, ¶ 15; *Hill*, ¶¶ 29-31; *State v. Rahn*, 2008 MT 201, ¶¶ 6 and 19-23, 344 Mont. 110, 187 P.3d 622, *overruled on other grounds by Newbary*, ¶ 5 n.1; *Bartosh*, ¶ 19; *Rardon III*, ¶¶ 18-19; *Rardon II*, ¶¶ 19-22; *LaMere*, 272 Mont. at 357-60, 900 P.2d at 927-29. In contrast to a breach of an express plea agreement term, however, "no hard and fast criteria" determine whether a prosecutor has not performed as promised in a "good faith and fair" manner that will "not undermine" the

---

[5] The right to due process of law guaranteed by Article II, Section 17, of the Montana Constitution, and the Fourteenth Amendment to the United States Constitution includes, *inter alia*, the right to fundamental fairness at all stages of government proceedings involving deprivations of individual liberty interests. *See In re B.N.Y.*, 2003 MT 241, ¶ 21, 317 Mont. 291, 77 P.3d 189; *Lassiter v. Durham Cty. Dep't of Soc. Servs.*, 452 U.S. 18, 24-25, 101 S. Ct. 2153, 2158 (1981); *Application of Gault*, 387 U.S. 1, 19-31, 87 S. Ct. 1428, 1439-45 (1967); *United States v. LaPage*, 231 F.3d 488, 491 (9th Cir. 2000) ("due process clause entitles defendants in criminal cases to fundamentally fair procedures"). *See similarly Mackey v. United States*, 401 U.S. 667, 689, 91 S. Ct. 1160, 1165 (1971) (Harlan, J., concurring and dissenting) (procedures used to criminally convict individuals "must [be] fundamentally fair, that is, in accordance with the command of the Fourteenth Amendment that 'no State shall . . . deprive any person of life, liberty, or property, without due process of law'"—quoting *Twining v. New Jersey*, 211 U.S. 78, 29 S. Ct. 14 (1908)).

[6] "Lip service" is a colloquialism referring to "avowed [verbal] expressions of adherence, devotion or allegiance" to something but which the declarant undermines or countermands through contemporaneous or subsequent "deeds" or conduct. *Hill*, ¶ 29 n.3 (dictionary citation omitted).

33

agreed sentencing recommendation or related sentencing consideration. *Rardon III*, ¶ 20; *Hill*, ¶ 29 (citing *Rardon II*, ¶ 21). Whether prosecutorial conduct at sentencing undermines and breaches the implied covenant of good faith and fundamental fairness regarding a plea agreement depends on the totality of the unique circumstances in each case. *Rardon III*, ¶ 20; *Hill*, ¶ 29 (quoting *Rardon II*, ¶ 21).

¶48 For example, a prosecutor may not repeatedly or unnecessarily make or elicit inflammatory statements from victims or witnesses with the manifest intent or likely effect to influence the judge to deviate from the plea agreement recommendation. *Rardon II*, ¶¶ 19-22 (prosecutor's agreed sentencing recommendation was mere "lip service" resulting in breach of the plea agreement where juxtaposed against his fervent elicitation of "inflammatory" opinion testimony from victim/witness regarding length of the recommended sentence, aggressively "reiterating and emphasizing the negative aspects" of defendant's required psychosexual evaluation, and pointing out a PSI assertion that a long prison sentence would "motivat[e]" defendant's rehabilitation). A prosecutor may similarly breach a plea agreement if he or she makes an agreed sentencing recommendation but then undermines it by unnecessarily presenting evidence that contradicts the agreed recommendation or by emphasizing countervailing negative information about the defendant without counterbalanced explanation of the justification for the agreed sentencing recommendation. *See, e.g., Rahn*, ¶¶ 6 and 19 (prosecutor undermined and breached an agreed recommendation for specific sentence based on a sex offender risk/tier designation recommendation in a psychosexual evaluation provided by a qualified evaluator by later presenting adverse testimony from another evaluator attacking the

34

validity of initial evaluation and recommending a higher risk/tier designation and longer sentence); *LaMere*, 272 Mont. at 357-60, 900 P.2d at 927-29 (agreed sentencing recommendation was mere lip service resulting in breach of the plea agreement where the prosecutor gave no explanation for the recommended deferred sentence and then undermined it by emphasizing defendant's undesirable characteristics, i.e., constant alcohol use and bragging, repeated failure to complete school and jobs, and lack of desire or motivation to seek alcohol treatment). *See similarly Bowley*, 282 Mont. at 310-12, 938 P.2d at 599-600 (despite initially making agreed sentencing recommendation, prosecutor breached plea agreement by then "effectively endors[ing]" a different recommendation made by the probation/PSI officer); *United States v. Mondragon*, 228 F.3d 978, 979-81 (9th Cir. 2000) (prosecutor breached plea agreement by unnecessarily restating/elaborating on adverse information already set forth in the sentencing hearing record where comments not made to provide court with any pertinent new information or to correct any pertinent factual inaccuracies).

¶49 In contrast, within the scope of the information or evidence required or authorized by statute for court consideration at sentencing,[7] the prosecutor may properly: (1) note independent victim statements, concerns, and opinions regarding the circumstances, impact, and appropriate sentence of and for the subject crime(s); (2) acknowledge or note

---

[7] *See* §§ 46-18-111(1)(a) and -112(1)-(2), MCA (probation officer PSI, report contents, and required court consideration thereof); § 46-18-111(1)(b)-(e), MCA (required psychosexual evaluation report and recommendations in re sex offenders and required mental health evaluation report and recommendations to court in re violent offenders); § 46-18-115(4), MCA (victim right to make statement by writing, reading, or sentencing hearing testimony in re victim impact, circumstances and manner of commission of the crime, and "victim's opinion regarding appropriate sentence," and required court consideration thereof).

the defendant's criminal and relevant personal history, the circumstances of the offense(s), charges previously dismissed or amended as part of the plea agreement, and different sentencing, placement, and other pertinent sentencing considerations and recommendations independently made by the probation officer regarding his or her PSI report; and (3) acknowledge or note any similar information, conclusions, opinions, or recommendations made by third-party evaluators regarding any required or authorized psychosexual or mental health evaluation and report. *See Ellison*, ¶¶ 16 and 22; *McDowell*, ¶¶ 19 and 22-25; *State v. Manywhitehorses*, 2010 MT 225, ¶¶ 11-16, 358 Mont. 46, 243 P.3d 412; *Hill*, ¶¶ 11, 14-16, and 27-31; *Rardon III*, ¶¶ 16-22; *Rardon II*, ¶ 22. However, the prosecutor may do so only to the extent: (1) not expressly prohibited by the terms of the plea agreement; (2) relevant, i.e., necessary, to the particular sentencing at issue; and (3) done in a tempered or neutral manner not manifestly intended or likely to undermine the plea agreement and thus encourage or influence the court to reject or deviate from the agreement. *See, e.g.*, *Ellison*, ¶¶ 16 and 22 (plea agreement not breached by prosecutor reference to defendant's prior non-compliance with bail conditions earlier in the case where prosecutor made recommendation for deferred sentence as agreed, as distinguished from mere lip service and undermining prosecutorial conduct at issue in *Rardon II* and *LaMere*); *McDowell*, ¶¶ 6, 19, and 22-25 (no breach where prosecutor offered victim "the opportunity to state her opinion" that defendant "should be punished" and "should [not] get off on a minimal sentence" and recommended probation conditions where neither was prohibited by the agreement, defendant's expectation of unconditional probation was unreasonable under the circumstances, and prosecutor fully performed as expressly promised in the plea

agreement); *Manywhitehorses*, ¶¶ 11-16 (prosecutor presentation at negligent homicide sentencing of photos of victim's dead body and testimony of investigating detective and State's forensic child abuse expert regarding circumstances of the subject offense did not undermine/breach the plea agreement where prosecutor made agreed sentencing recommendation and such evidence was not expressly precluded by the plea agreement and was relevant to defendant's history and "the incidents leading up to [victim's] death," regardless of similar relevance to deliberate homicide as originally charged); *Hill*, ¶¶ 11, 14-16, and 27-31 (prosecutor did not undermine the plea agreement recommendation by pointing out a PSI-included impact statement from alleged victim at issue in sexual abuse charge previously dismissed pursuant to the plea agreement where court was already aware of the alleged circumstances underlying the previously dismissed charge, the PSI/psychosexual evaluation independently referenced defendant's "long, substantial, and documented history of sexual contacts with children resulting in opinions of treatment providers, professional evaluators, and probation officers that he is a danger to the community," and defense counsel acknowledged that he "should be supervised for the remainder of his life"); *Rardon III*, ¶¶ 16-22 (no prosecutor breach of plea agreement by presentation/elicitation of victim and family member testimony in re circumstances/impact of the crime, defendant's related historical abuse of family members and violent nature, and a victim opinion that he should be "put away for a very, very long time" where plea agreement did not expressly preclude such testimony and prosecutor fully performed as expressly agreed in the plea agreement—distinguishing inflammatory prosecutor conduct and breach at issue in *Rardon II*); *Rardon II*, ¶ 22 (prosecutor may properly note or elicit

37

at sentencing any independent victim impact statements and related victim "fears and feelings" but may not "aggressively solicit testimony . . . clearly intended to undermine the plea agreement" and thereby influence the court to reject or deviate from the plea agreement recommendation). *See similarly Bowley*, 282 Mont. at 311-12, 938 P.2d at 600 (prosecutor's neutral reference to different sentencing recommendation independently made by probation/PSI officer does not undermine/breach the plea agreement recommendation where not effectively/implicitly endorsed by the prosecutor—citing *State v. Yother*, 253 Mont. 128, 137, 831 P.2d 1347, 1352 (1992)).

¶50    Here, Collins asserts that the State merely paid "lip service" to the agreed sentencing recommendation by simply stating "in a single sentence" in its initial sentencing recommendation that the State was required to follow the plea agreement without further explanation. He asserts that the State thus breached the agreement by failing to "fairly or strongly argue for" it and then affirmatively undermining it by repeated reference and emphasis to the court of the traumatic impact of the subject crimes on the victims and their stated displeasure with the agreed recommendation in the victim impact statements.[8] As a

---

[8] Assertions of prosecutor breach of a plea agreement unpreserved by contemporaneous objection *at the time of sentencing* are generally waived subject only to limited plain error review for "those breaches that are so obvious and substantial that a failure to address the breach would affect the fairness of the proceedings." *State v. Stratton*, 2017 MT 112, ¶ 14, 387 Mont. 384, 394 P.3d 192 (such obvious and substantial breaches are those that "would almost undoubtedly cause the court to question the appropriateness of the recommended sentence and effectively taint the sentencing procedure"—citation omitted). *See similarly Puckett*, 556 U.S. at 135-43, 129 S. Ct. at 1428-33 (a prosecutor breach of a plea agreement neither "necessarily render[s] a criminal [proceeding] fundamentally unfair" for purposes of plain error review, nor constitutes structural error precluding prejudice-focused harmless error review). Apparently based on its characterization of Collins' plea agreement breach claim as the predicate for a timely post-judgment motion under § 46-16-105(2), MCA, for withdrawal of his adverse pleas (a characterization at the same time mirrored in Collins' Reply Brief but otherwise disputed on appeal), the State does not assert that his breach

threshold matter, Collins correctly points out that, in the State's initial recommendation at sentencing, the prosecutor neither verbally articulated the agreed sentencing recommendation, nor provided any explanatory justification for it.

¶51 We have previously addressed a similar situation where the prosecutor neither "specifically voice[d]" the agreed sentencing recommendation at the sentencing hearing, nor provided any explanatory justification for it. *State v. Brown*, 193 Mont. 15, 17-18, 629 P.2d 777, 778 (1981) (punctuation omitted). In response to the defense assertion that the State thus breached the plea agreement, we noted, however, that the subject plea agreement was filed with the district court "nearly a month before the sentencing hearing" and that the court "acknowledged the existence of [the] agreement" throughout the sentencing hearing with "particular mention" of the agreed recommendation at the time of imposition of sentence. *Brown*, 193 Mont. at 17, 629 P.2d at 778. We held that the State satisfied its "obligation under the agreement" under the circumstances because it was "evident" that the court was already "fully apprised" of the plea agreement and "was aware of the [agreed] recommend[ation] . . . throughout the sentencing process." *Brown*, 193 Mont. at 17-18, 629 P.2d at 778.

¶52 Likewise, here the subject plea agreement was filed long before the sentencing hearing, and both the change of plea hearing and sentencing hearing records manifest that the District Court was acutely aware of the terms of the plea agreement, including the

assertion of error is subject only to limited plain error review. Without express or implicit holding or comment on this unbriefed issue, I would thus review Collins' assertion of error on the merits without plain error limitation under the unique circumstances presented.

agreed sentencing recommendation.  Accordingly, during the sentencing hearing, the court twice questioned whether any further explanation or argument was necessary, including at the time of imposition of sentence, to wit, e.g.:

> [A]t this time, would the State wish to make any argument to the Court, *recognizing* [*that*] *we're here pursuant to the plea agreement*?

(Emphasis added.)  Manifestly cognizant of the court's familiarity with the plea agreement, the prosecutor affirmatively responded:

> Well, not necessarily an argument, your Honor.  We did reach the plea agreement in good faith, so we will abide by our commitment to ask the Court to follow the terms of the plea agreement.

As implicitly recognized in *Brown*, the prosecutor's duty of good faith and fundamental fairness implied by law in plea agreements does not necessarily require an *enthusiastic* recommendation or explanation at the sentencing hearing "so long as he or she acts in good faith and does not [otherwise] undermine the agreement." *Bullplume*, ¶ 16. *See similarly United States v. Benchimol*, 471 U.S. 453, 455-56, 105 S. Ct. 2103, 2105 (1985) (per curium) (prosecutor must only satisfy the express terms of a plea agreement and then not otherwise undermine them).

¶53     Here, as in *Brown*, the record manifests that the District Court was already well aware of the terms of the plea agreement, and the circumstances of record from which it arose and under which Collins changed his pleas to the two non-sex offenses, as amended from the far more serious child sex offenses originally charged.  The State further attested that it entered into the plea agreement in "good faith," unequivocally stood by its "commitment," and thus "ask[ed] the Court to follow the terms of the plea agreement."

Under these circumstances, I agree that the State sincerely and in good faith satisfied the express terms of the plea agreement, with the only remaining requirement that the prosecutor not subsequently undermine the agreed recommendation through unnecessary comment or conduct having no legitimate purpose other than to influence the court to deviate from the non-binding recommendation.

¶54 Collins accordingly asserts that the prosecutor breached her implied duty of good faith and fundamental fairness by "repeatedly directing the court" to the victims' disagreement and displeasure with the plea agreement and "emphasiz[ing]" that the agreed resolution "was unjust," and by "later interject[ing] a lengthy statement highlighting the inadequacy of the plea agreement," referencing and "reiterating" the particular emotional trauma suffered by the victims, "ask[ing] the court to consider the victim[] impact statements," and specifically referring to the alleged victim in the originally-charged Count 2 that was subsequently dismissed pursuant to the applicable statute of limitations. Collins thus attempts to analogize the circumstances of this case to the breaching prosecutorial conduct at issue in *Rardon II*, *supra*, and that found problematic by three concurring justices in *Hill*, ¶¶ 48-50 (Cotter, J., concurring) (i.e., reminding the court about the impact suffered by the alleged victim in a previously dismissed charge and noting the asserted strength of the State's evidence regarding the dismissed charge). However, Collins' assertions are either wholly unsupported by the sentencing hearing record or not circumstantially analogous to those found problematic in *Rardon II* and the *Hill* concurrence. Fairly read in context, the prosecutor here made no statement asserting or implying, much less emphasizing, that the agreed sentencing recommendation was

41

"unjust" or inadequate in the interests of justice. Nor did she *ask* the court to consider the victim impact statements, repeatedly *direct* the court to the victims' disagreement and displeasure with the plea agreement, or otherwise unnecessarily refer to either of those matters.

¶55 Moreover, as in *McDowell*, *Hill*, and *Rardon III*, *supra*, the prosecutor's acknowledgment of the District Court's duty to consider the victim impact statements previously submitted and included in the PSI, notification of the desire of the two authors to read their respective victim impact statements at sentencing, and acknowledgment of their included adverse opinions and concerns regarding the plea agreement recommendation were all within the authorized scope of information specified for court consideration in §§ 46-18-111(1)(a), -112(1)-(2), and -115(4), MCA (victim impact statements and PSI information). As to the prosecutor's reference to the fact that the originally-charged Count 2 was dismissed through no fault of the alleged victim, Collins neither objected below, nor asserts on appeal here, that the victim impact statement submitted and read by the alleged Count 2 victim was either improperly included in the PSI, or improperly read by her at sentencing. As a matter of record, the District Court was already well aware of the reason for the prior dismissal of the originally-charged Count 2 based on the statute of limitations. Perhaps most significantly, the record clearly reflects that the prosecutor's supplemental, post-defense recommendation/comments to the court regarding the victims and victim impact statements were, as asserted by defense counsel and acknowledged by the court, manifestly intended to *support* the plea agreement in a manner respectful to the stated victim concerns. Under these circumstances, the prosecutor

neither implicitly or effectively endorsed the stated victim concerns regarding the plea agreement recommendation, nor acknowledged the independently-stated victim statements and concerns in an unnecessary, irrelevant, repetitive, or inflammatory manner with no legitimate purpose other than to undermine the plea agreement. The facts, circumstances, and prosecutorial conduct at issue here were not at all analogous to the objectionable and breaching prosecutorial conduct at issue in *Rardon II* or as noted by the concurring justices in *Hill*. Under the particular record circumstances of this case, I concur with the ultimate Majority holding that the State neither paid mere lip service to the agreed sentencing recommendation, nor subsequently undermined it, and therefore did not breach the plea agreement as alleged by Collins.

¶56    2. *Whether the District Court illegally imposed sex offender registration on non-sexual offenses without Collins' consent in violation of § 46-23-512, MCA?*

¶57    A person convicted of a "sexual offense," as defined by § 46-23-502(9), MCA, must publicly register as a "sex offender" for a duration dependent on his or her sex offender risk/tier threat level designation, as assigned at sentencing upon consideration of a mandatory psychosexual evaluation. Sections 46-23-506(1), (3), -509(1)-(2), -502(10), and 46-18-111(1)(b), MCA (Montana Sexual or Violent Offender Registration Act (SVORA)). A sentencing court may order a person to submit or comply with mandatory sex offender registration only as specifically authorized by statute. *State v. Hastings*, 2007 MT 294, ¶ 19, 340 Mont. 1, 171 P.3d 726. However, as a limited exception to the generally narrow application of sex offender registration to persons convicted of a "sexual offense," a sentencing court may order a person convicted of an offense that is not a "sexual offense"

43

to nonetheless register as sex offender if the court "accept[s]" a plea agreement in which the defendant "agree[s]," *inter alia*, to "comply with [SVORA] registration requirements." Section 46-23-512, MCA.

¶58   For example, in *State v. Grana*, 2009 MT 250, 351 Mont. 499, 213 P.3d 783, a defendant charged with seven counts of the non-sexual offense of burglary, based on his unauthorized entry into the homes of women to commit "sexually offensive acts" (i.e., masturbating and leaving his ejaculate in conspicuous places with offensive sexually explicit notes), entered into a written plea agreement with the State under which he would plead guilty to three counts of burglary in return for dismissal of the other four counts and a non-binding State recommendation for concurrent six-year deferred impositions of sentence on each of the three counts. *Grana*, ¶¶ 5-7.[9]  *Inter alia*, the plea agreement included an express provision that the defendant "would register as a Level II sexual offender," subject to the defendant's retained right to "oppose the registration requirement and/or" Level II SVORA sex offender risk/tier "designation" at sentencing. *Grana*, ¶ 6. At sentencing, the court sentenced the defendant in accordance with the non-binding plea agreement recommendation for deferred impositions of sentence and, over his objection, ordered him to register as a Level II sex offender. *Grana*, ¶¶ 7-8. However, upon subsequently revoking the original deferred impositions of sentence and resentencing the defendant to partially-suspended prison terms, the court did not reimpose sex offender

---

[9] *Compare* § 46-12-211, MCA (distinguishing between court *acceptance or rejection* of a binding "*plea agreement*" "that a specific sentence is the appropriate disposition of the case" and court *acceptance or rejection* of the agreed *sentencing* "*recommendation*" in a non-binding plea agreement—emphasis added).

registration as agreed in the original plea agreement. *Grana*, ¶ 8. Five years later, in resolution of a dispute between the defendant and the State, the court ruled that the new sentence on revocation of the original sentence by omission did *not* require the defendant to register as a sex offender. *Grana*, ¶ 9. A year later, upon new probation violations, the court revoked the defendant's second sentence and again resentenced him anew but, unlike before, required him to register as a sex offender as agreed in the original plea agreement. *Grana*, ¶¶ 10 and 13.

¶59 On appeal, the defendant asserted that the court illegally imposed sex offender registration on his second resentencing without his consent in an accepted plea agreement in violation of § 46-23-512, MCA. *Grana*, ¶¶ 12-14. We disagreed based on his prior agreement in the original plea agreement, and because, despite his subsequent resentencing to prison on revocation of his original deferred impositions of sentence, the defendant "obtained the full benefit of the plea bargain" in the form of the State's original non-binding sentencing recommendation and accompanying "dismissal of four of the original seven burglary charges." *Grana*, ¶ 13. We thus held that § 46-23-512, MCA, authorized the court to impose sex offender registration on his second resentencing on revocation. *Grana*, ¶ 14.

¶60 Here, without further analysis, Collins asserts that the District Court illegally imposed sex offender registration because it did not accept the plea agreement as expressly required by § 46-23-512, MCA, as a condition precedent to imposing sex offender registration on the non-sexual offenses at issue. Collins further asserts in his Reply Brief that the agreed "sentencing recommendation was the only meaningful aspect of the plea

45

agreement that called for any acceptance or rejection by the court." However, Collins'

cursory analysis disregards the critical distinction between a court's *acceptance or*

*rejection* of the entirety of a binding "*plea agreement*" as required by § 46-12-211(1)(b)

and (2)-(4), MCA, and the *acceptance or rejection* of an agreed "*recommendation . . . for*

*a particular sentence*" in a non-binding plea agreement for which § 46-12-211, MCA,

neither requires nor involves similar court acceptance or rejection of the other terms of the

larger *plea agreement* in which the non-binding recommendation is included. *See*

§ 46-12-211(1)(c) and (2), MCA (emphasis added). He thus conflates the critical statutory

distinction between the nature and effect of binding and non-binding plea agreements and

then asks us to accordingly apply that conflation to the language of § 46-23-512, MCA, in

isolation. The Majority abides. The Court's conclusion that, "[b]y deviating from the plea

agreement's sentencing recommendation, the District Court rejected the plea agreement,"

conspicuously renders § 46-12-211(1)(b), (c), and (2)-(4), MCA, and the distinction

between binding and non-binding plea agreements expressly provided therein, essentially

meaningless. Opinion, ¶ 36.

¶61    The narrow purpose and reach of statutory construction is to "ascertain and declare

what is in terms or in substance contained therein," not "insert what has been omitted" or

"omit what has been inserted." Section 1-2-101, MCA. To the extent possible, statutes

must be construed to effect the manifest intent of the Legislature in accordance with the

clear and unambiguous language of its enactments, without resort to other means of

construction. *Larson v. State*, 2019 MT 28, ¶ 28, 394 Mont. 167, 434 P.3d 241 (citing

*Mont. Vending, Inc. v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d

46

499). Courts must first attempt to construe the subject statutory term or language in accordance with the plain or technical meaning of its express language, in context of the pertinent statutes as a whole, and in furtherance of the manifest purpose of the statutory provision and the larger statutory scheme in which the subject term or language is included. Section 1-2-106, MCA; *Mt. Water Co. v. Mont. Dep't of Revenue*, 2020 MT 194, ¶ 27, 400 Mont. 484, 469 P.3d 136 (citing § 1-2-106, MCA, and *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666); *City of Bozeman v. Lehrer*, 2020 MT 55, ¶ 11, 399 Mont. 166, 459 P.3d 850 (citing *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426, and *S.L.H. v. State Comp. Mut. Ins. Fund*, 2000 MT 362, ¶ 16, 303 Mont. 364, 15 P.3d 948); *In re Marriage of McMichael*, 2006 MT 237, ¶ 14, 333 Mont. 517, 143 P.3d 439. In construing several statutory "provisions or particulars," courts must, to the extent possible, construe them in harmony, with effect to all. Section 1-2-101, MCA.

¶62 Under § 46-12-211, MCA, a so-called binding plea agreement is an agreement under which the defendant agrees to plead guilty or "nolo contendere" to a charged offense in return for the prosecutor's "agree[ment] that a specific sentence is the appropriate disposition of the case." Section 46-12-211(1)(b), MCA. The court must then specifically "accept or reject the *agreement*." Section 46-12-211(2), MCA (emphasis added). "If the court accepts a [binding] plea agreement," it must then so "inform the defendant" and embody in its sentencing of the defendant the agreed "disposition provided for in the plea agreement." Section 46-12-211(1)(b) and (3), MCA. But, "[i]f the court rejects a [binding] plea agreement of the type specified in" § 46-12-211(1)(b), it must then: (1) so "inform the parties" of the rejection; (2) "afford the defendant an opportunity to withdraw the

47

[related change of] plea"; and (3) inform the defendant "that the court is not bound by the plea agreement" and "advise . . . that if the defendant [nonetheless] persists in the guilty or nolo contendere plea, the disposition of the case may be less favorable . . . than that contemplated by the plea agreement." Section 46-12-211(4), MCA.

¶63    In contrast, as pertinent, a so-called non-binding plea agreement is an agreement in which the prosecutor agrees to "make a *recommendation*" to the court "for a particular *sentence*," and which "*recommendation*" is "*not . . . binding upon the court.*" Section 46-12-211(1)(c), MCA (emphasis added).[10]    "[I]f the court does *not accept* the [non-binding] *recommendation* . . . , the defendant nevertheless has no right to withdraw the plea." Section 46-12-211(2), MCA (emphasis added).[11]  Accordingly, as a matter of law pursuant to the express language of § 46-12-211, MCA, *binding* plea agreements necessarily require specific court acceptance or rejection of the entire "*plea agreement*" as a whole. *See* § 46-12-211(1)(b) and (2)-(4), MCA (binding plea agreements—emphasis added).  In contrast, *non-binding* plea agreements merely involve court acceptance or

---

[10] Under a non-binding plea agreement, the prosecutor may alternatively "agree not to oppose the defendant's request[] for a particular sentence," and which "request may not be binding upon the court." Section 46-12-211(1)(c), MCA.

[11] Section 46-12-211, MCA, also authorizes a third type of plea agreement under which the defendant may agree to plead guilty or "nolo contendere" to a particular charged offense in return for the prosecutor's agreement to "move for dismissal of other charges." Section 46-12-211(1)(a), MCA.  However, this third type of agreement is merely another type of binding plea agreement. *See* § 46-12-211(2) and (4), MCA ("court may accept or reject" a plea agreement "of the type specified in subsection (1)(a)" and, if it "rejects [such] plea agreement," shall so inform the defendant, advise "that the court is not bound by the plea agreement," and "afford the defendant an opportunity to withdraw the plea," *inter alia*). *See similarly* § 46-12-211(1)(b), (2), and (4), MCA, *supra*.  *Compare* § 46-12-211(1)(c) and (2), MCA (non-binding plea agreements under which defendant "has no right to withdraw the plea" if court does not accept the non-binding "recommendation . . . for a particular sentence"), *supra*.

rejection/deviation of/from the agreed "*recommendation . . .* for a particular sentence" as contemplated contingencies, *inter alia*, under the express terms of the larger *plea agreement*, without requirement, need, or effect of specific court rejection or acceptance of the balance of the larger plea agreement as a whole. *See* § 46-12-211(1)(c) and (2), MCA (non-binding plea agreements—emphasis added).[12]  If valid, Collins' isolated construction of § 46-23-512, MCA (*inter alia*, requiring defendant agreement to sex offender registration "as part of a plea agreement" and court acceptance of the "plea agreement"), would thus *not* allow defendants to agree to, and courts to thus impose, sex offender registration regarding non-sexual offenses in and pursuant to non-binding plea agreements, but rather, only in and pursuant to binding agreements.

¶64   The Majority correctly notes that Collins' plea agreement was a *non-binding* agreement, Opinion, ¶ 13, but then goes on to erroneously state that "*the agreement* could be rejected by the court pursuant to § 46-12-211(1)(c), MCA." Opinion ¶ 35 (emphasis added).  However, § 46-12-211(1)(c), MCA, does not provide for court rejection of an otherwise valid plea agreement—it provides for court rejection of the particular non-

---

[12] *See also* § 46-12-211, MCA, *Commission Comments* (1991) (Section 46-12-211 was "based on" Fed. R. Crim. P. "11(e)" with subsections (3) and (4) "simply restatements of Rules 11(e)(3) and 11(e)(4)"); Fed. R. Crim. P. 11(c)(1) and (3)-(5) (as amended after 1991); *United States v. Babineau*, 795 F.2d 518, 519-20 (5th Cir. 1986) (statutory requirements for formal/express acceptance or rejection of a binding plea agreement do not apply to non-binding agreements); *United States v. Savage*, 561 F.2d 554, 556 (4th Cir. 1977) (recognizing that "[n]on-acceptance" of the agreed sentencing recommendation is merely a contemplated part or contingency that does not affect the enforceability of the other terms of a non-binding plea agreement rather than a rejection of the entire agreement as in the case of a binding plea agreement—internal citation omitted). *Accord United States v. Bachynsky*, 949 F.2d 722, 728 n.5 (5th Cir. 1991); *United States v. Missouri Valley Const. Co.*, 704 F.2d 1026, 1028-29 (8th Cir. 1983); *United States v. Henderson*, 565 F.2d 1119, 1122-23 (9th Cir. 1977).

binding sentencing *recommendation* in a non-binding plea agreement without regard to the other enforceable terms of the agreement. As a matter of law, the authorizing statutory requirement for specific acceptance or rejection of a *binding* "plea agreement" *as a whole* does not apply to the non-binding *sentencing* "*recommendation*" included in a *non-binding* plea agreement. *See* § 46-12-211(1)(b) and (2)-(4), MCA; *compare* § 46-12-211(1)(c) and (2), MCA. By statutory definition, *non-binding* plea agreements, unlike *binding* agreements, contemplate court rejection of the included non-binding recommendation for a particular sentence as a contemplated contract contingency which does not affect the validity or enforceability of the other lawful terms included in the larger agreement. *See* § 46-12-211(1)(c) and (2), MCA (no right to withdraw plea on court rejection of non-binding sentence recommendation). Thus, if a non-binding plea agreement includes, *inter alia*, a defendant's separate agreement to be subject to sex offender registration, the court's contemplated rejection of the non-binding sentencing recommendation does not invalidate or affect the enforceability of the separate sex offender registration term of the agreement *except and unless* as another applicable statute may provide or as otherwise provided by another express term of the agreement. Section § 46-23-512, MCA (defendant consent to non-mandatory sex offender registration) is the only other applicable statute here. However, the required acceptance of the entirety of a *binding* "plea agreement," as similarly referenced and required in §§ 46-12-211(1)(b), (2)-(4), and 46-23-512, MCA, *supra*, is as a matter of law simply not the same as the contemplated court rejection or acceptance of an agreed "*recommendation . . .* for a particular *sentence*" which is merely an included term in a *non-binding* plea agreement, as distinctly referenced and provided

50

for in § 46-12-211(1)(c) and (2), MCA. Consequently, in the case of a non-binding plea agreement which, *inter alia*, already includes both a non-binding recommendation for a particular sentence and a separate defendant agreement to be subject to sex offender registration, nothing in the express language of § 46-23-512, MCA, provides or evinces any legislative intent to then incongruously require the court to further specifically accept the entirety of an agreement to which the *specific acceptance or rejection requirements* of the authorizing statute (§ 46-12-211, MCA) *do not apply*. The Majority thus fails to acknowledge, much less reconcile, the necessary consequence of a court "reject[ing] a plea agreement" contemplated by § 46-12-211(4), MCA (in re binding plea agreements), i.e., "afford[ing] the defendant an opportunity to withdraw [his] plea" upon rejection in toto of a *binding* plea agreement, with the District Court's more limited rejection in this case of the agreed but non-binding *recommendation for a particular sentence* in Collins' larger non-binding plea agreement.

¶65     In that same vein, whether mandatory for sexual offenses under § 46-23-504(1)-(2), MCA, or merely permissive regarding non-sexual offenses pursuant to a plea agreement under § 46-23-512, MCA, the requirement for SVORA sex offender registration is neither part of a particular recommended "sentence" as referenced in § 46-12-211(1)(c), MCA (non-binding plea agreements), nor an agreed "disposition of the case," as referenced in § 46-12-211(1)(b), MCA (binding plea agreements). *See* § 46-1-202(25), MCA (defining "*sentence*" as the "*judicial disposition* of a criminal proceeding upon" a guilty or nolo plea

or "a verdict or finding of guilty"—emphasis added).[13]  In contrast to a particular sentence or sentencing disposition, sex offender registration is a "stand-alone requirement dictated by statute" and thus "an independent statutory duty with a remedial purpose."  *In re M.W.*, 2012 MT 44, ¶ 16, 364 Mont. 211, 272 P.3d 112 (citing, *inter alia*, *State v. Munds*, 922 P.2d 215, 217-18 (Wash. Ct. App. 1996) (noting sex offender registration as a "duty . . . [that] arises pursuant to legislative mandate," rather than discretionary "order of the sentencing court"), and *State v. Robinson*, 142 P.3d 729, 732-34 (Idaho 2006) (affirming denial of petition for relief from statutory sex offender registration upon completion of probationary sentence and resulting setting aside of underlying sex offense guilty plea because defendant had not yet satisfied the independent statutory requirements for such relief)).

¶66  Upon valid contract formation of a non-binding plea agreement authorized by § 46-12-211, MCA, defendants, like the State, are bound to all lawful contract provisions and obligations included in the agreement.  *Schoonover*, ¶ 12 (prosecutor and defendants "are bound by the plea agreements they make").  *See also* § 46-12-211(2), MCA (no right to withdraw adverse plea upon court rejection or deviation from agreed sentencing recommendation in a non-binding plea agreement).  A criminal defendant therefore may not escape the enforceable obligations of a validly-formed and lawful plea agreement after receiving the benefits of the agreement.  *State v. Johnson*, 274 Mont. 124, 129, 907 P.2d 150, 153 (1995) (quoting *State v. Milinovich*, 269 Mont. 68, 74, 887 P.2d 214, 218 (1994));

---

[13] *See also* § 46-1-202(11), MCA (defining "judgment" as an "adjudication . . . [of] guilty or not guilty," and if guilty, further "includes the sentence pronounced by the court").

*State v. Reynolds*, 253 Mont. 386, 392-93, 833 P.2d 153, 157 (1992) (citing *State v. Radi*, 250 Mont. 155, 162, 818 P.2d 1203, 1208 (1991), and *State v. Koepplin*, 213 Mont. 55, 64, 689 P.2d 921, 926 (1984)); *State v. Nance*, 120 Mont. 152, 166, 184 P.2d 554, 561 (1947). Accordingly, construing the express language of § 46-23-512, MCA, together with and in the context of § 46-12-211(1)(b), (c), and (2)-(4), MCA, to give effect to all, I would hold that the express language of § 46-23-512, MCA, requiring "court accept[ance] [of] the *plea agreement*" as a condition precedent to imposition of SVORA sex offender registration regarding non-sexual offenses applies to *binding* plea agreements under § 46-12-211(1)(b) and (2)-(4), MCA, but *not* to a court's rejection of or refusal to follow a non-binding recommendation for a particular sentence in a *non-binding* plea agreement under § 46-12-211(1)(c) and (2), MCA, in which the defendant agrees, *inter alia*, to be subject to SVORA sex offender registration, and the terms of the agreement do not otherwise provide for conditional withdrawal of the defendant's consent to register in the event that the sentencing court may reject or deviate from the non-binding sentencing *recommendation*.

¶67     Here, the offenses of Criminal Endangerment to which Collins agreed to plead guilty and nolo contendere are neither "sexual offenses" nor "violent offenses" triggering mandatory SVORA sex offender registration. *See* §§ 46-23-502(9), (10), (13), and -504(1)-(2), MCA; *compare* § 45-5-207, MCA. He nonetheless expressly agreed unconditionally, however, to be subject to SVORA sex offender registration "as part of a plea agreement," as referenced in § 46-23-512, MCA. As a matter of law, the subject plea agreement was a non-binding plea agreement as authorized and defined by § 46-12-211(1)(c) and (2), MCA. Collins entered into the agreement, and accordingly pled guilty

53

and nolo contendere to two amended counts of Criminal Endangerment, with full knowledge and understanding that the District Court was not a party to the agreement, would not be bound by the agreed sentencing recommendation for six-year probationary sentences on the subject offenses, and could thus impose the maximum punishments authorized by law on those offenses, and that he would have no right to withdraw his pleas if the court rejected and deviated from the agreed sentencing recommendation. As a matter of law upon construing § 46-23-512, MCA, in context with § 46-12-211, MCA, and giving full effect to both in accordance with the express language of each, the language of SVORA § 46-23-512, MCA, requiring "court accept[ance] [of] the plea agreement" as a condition precedent to imposition of sex offender registration regarding non-sexual offenses does not apply to a court's rejection of or refusal to follow a non-binding recommendation for a particular sentence in a non-binding plea agreement of the type specified by § 46-12-211(1)(c), MCA.

¶68 Nor did the subject plea agreement include any term or condition reserving to Collins the right to withdraw his consent to be subject to sex offender registration if the court rejected or deviated from the agreed non-binding sentencing recommendation. Moreover, despite the District Court's rejection of and deviation from the agreed non-binding *recommendation* for a particular *sentence*, as defined by § 46-1-202(25), MCA, Collins received the full benefit of the plea bargain he made with the State, including the State's amendment of the original SIWC and felony Sexual Assault charges involving child victims (Counts 1 and 3) down to two counts of felony Criminal Endangerment (Amended Counts 1 and 3), and the State's good faith recommendation for concurrent

54

six-year probationary sentences on those amended charges. Contrary to Collins' assertion that the agreed "sentencing recommendation was the only meaningful aspect of the of plea agreement," the State's amendment of the two originally-charged counts of SIWC and felony Sexual Assault involving child victims down to two counts of Criminal Endangerment was an unquestionably significant and meaningful inducement to enter into the non-binding plea agreement because, even if the court ultimately rejected the agreed sentencing recommendation, the agreement reduced the potential maximum penalties to which Collins would otherwise have been subject under the originally-charged child sex offenses from two consecutive terms of life imprisonment or 100 years in prison down to two consecutive 10-year prison terms on the amended non-sex offenses. *See* §§ 45-5-502(3), -503(2), (3)(a), and (4)(a), MCA (2019) (maximum penalties for SIWC and felony Sexual Assault involving children); *compare* § 45-5-207, MCA (2019) (maximum penalty for Criminal Endangerment). I would thus hold that the District Court lawfully imposed sex offender registration on Collins upon his conviction on the subject non-sexual offenses as agreed as part of his plea agreement with State and in accordance with § 46-23-512, MCA.

## CONCLUSION

¶69 Based on the foregoing Issue 1 analysis, I would hold that the District Court correctly concluded that the State did not undermine and breach the parties' June 2021 plea agreement as alleged by Collins. Based on the foregoing Issue 2 analysis, I would hold further that the District Court also lawfully imposed sex offender registration on Collins as agreed as part of his plea agreement with the State and in accordance with § 46-23-512,

55

MCA. I accordingly specially concur with the Majority's ultimate Issue 1 holding, but dissent from its Issue 2 holding.

/S/ DIRK M. SANDEFUR

Chief Justice Mike McGrath and Justice Beth Baker join in the special concurrence and dissent of Justice Sandefur.

/S/ MIKE McGRATH
/S/ BETH BAKER