FILED

04/09/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0256

DA 21-0256

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 78N

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

LEA ALEX YATES II,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 19-220
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Jeavon C. Lang, Assistant Appellate
Defender, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney
General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Victoria Callender, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  January 18, 2023

Decided:  April 9, 2024

Filed:

                      _____
                              Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion, and thus it shall not be cited as precedent. The case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Lea Alex Yates II appeals from the April 2021 judgment of the Montana Thirteenth Judicial District Court, Yellowstone County, sentencing him to a three year suspended term of commitment to the Montana Department of Corrections on the offense of felony assault on a minor. Yates asserts that the State breached the parties' plea agreement by making comments at sentencing that undermined the joint plea agreement sentencing recommendation. We reverse and remand for resentencing.

¶3 On February 19, 2019, Yates was caring for the two young children of his girlfriend while she was at work. When she returned several hours later and asked how the kids behaved in her absence, Yates told her that he had spanked almost three-year-old L.D. after she urinated on herself. When bathing the child later that evening, the mother saw bruising on the child's buttocks. When she asked Yates about it, he did not answer.

¶4 The next day, the maternal grandmother saw the bruising on the child's buttocks while providing daycare and reported it to both the Child and Family Services Division of the Montana Department of Public Health and Human Services, and the Yellowstone County Sheriff's Office. The law enforcement investigation found that the "bruising covered a significant portion of the [child's] buttocks," "appeared to be the result of

extreme force," and was thus "inconsistent with a single spanking." *Inter alia*, Yates asserted to law enforcement that he only spanked the child once, with his hand.

¶5 After the State formally charged Yates with felony assault on a minor, he and the original prosecutor negotiated the terms of a nonbinding plea agreement calling for him to plead guilty in return for the State joining him in recommending a four-year deferred imposition of sentence, a $1,000 fine, and any suitable treatment conditions. However, before the original prosecutor signed the negotiated plea agreement, the case was reassigned to a second prosecutor who later advised defense counsel that she would honor the agreement negotiated by her predecessor. In November 2020, the second prosecutor and Yates signed a nonbinding written plea agreement setting forth the terms previously negotiated with the original prosecutor. Upon an accompanying written acknowledgement and waiver of rights, and a comprehensive supplemental record change of plea colloquy with the court, Yates later pled guilty in accordance with the plea agreement.

¶6 At sentencing in March 2021, in advance of making the State's sentencing recommendation, the second prosecutor remarked:

> As I was getting this calendar ready for today[,] I was looking over this case and I seriously thought, what was I thinking; how could I have agreed to this sentence? But then I realized in going further, that it was not my sentence [but that] I had told [defense counsel] that I certainly would honor [the original prosecutor's] recommendation.

When the court asked whether the original prosecutor who negotiated the plea agreement was available to explain the reason why the State made the agreement, the second prosecutor advised the court that, after taking-over the case, she assured defense counsel

3

that she "would honor" the agreement negotiated by her predecessor, and then later signed the written plea agreement under which Yates pled guilty. In proceeding with her sentencing recommendation, the second prosecutor noted that Yates had no prior criminal convictions, but that his record manifested "some assaultive behavior that ha[d] not ever gone all the way to a conviction," a fact "that concern[ed] the State." She continued that she did not, however, "have anything in front of [her] to negate the agreement" and was "not going to try and back door" the agreement made by her colleague. The prosecutor ultimately asked the District Court to honor the agreed sentencing recommendation, but stated before doing so that:

> I just hope that [Yates] takes this as . . . a real gift from the court if the court goes along with this. Because this could have . . . been so much worse, in the State's opinion.

The second prosecutor ultimately offered no explanation or justification in support of the plea agreement.

¶7 After hearing from the defense in support of the plea agreement, the District Court rejected the plea agreement recommendation, and instead imposed a suspended three-year Department of Corrections commitment.[1] The Court reasoned that it was "not comfortable giving [Yates] a deferred sentence" based on the information included in his presentence

---

[1] Unlike the deferred imposition of sentence called for under the joint plea agreement recommendation, the suspended sentence deprived Yates of the statutory opportunity, upon successful completion of probation, to have the court strike the guilty plea and dismiss the case, thus causing the conviction to no longer appear on his public criminal history record. *See* §§ 46-18-201 and -204, MCA.

4

investigation report, the alleged facts and circumstances of the case, and the court's resulting desire that the conviction remain on Yates' public criminal history record due to the "severe" injury he inflicted upon the child. Defense counsel immediately objected to the sentence on the asserted ground that the prosecutor breached the plea agreement by making comments intended to undermine the agreed sentencing recommendation because "she thought [it] was possibly an inappropriate disposition." The District Court responded that it "didn't consider . . . at all" the "situation between" the different prosecutors, but instead considered the "severe" facts of the case and the "sentencing parameters" within the possible maximum penalty. The court's subsequent written sentencing rationale further noted, *inter alia*, the "violent circumstances of the offense" and that two previously charged, but ultimately dropped or dismissed, felony assault charges "illustrate[d] [Yates'] propensity for violence." In response to the defense objection at sentencing, the written judgment asserted that the prosecutor "did not backtrack on [the] agreement" recommendation." Yates timely appeals.

¶8    Whether the State breached a plea agreement is a mixed question of law and fact subject to de novo review. *See State v. Collins*, 2023 MT 78, ¶ 11, 412 Mont. 77, 528 P.3d 1106. We review related district court findings of fact only for clear error. *Collins*, ¶ 11. Within the framework of § 46-12-211, MCA (plea agreement authorization), plea agreements are contracts generally subject to applicable contract law standards, except as subject to the overlay of fundamental federal and state constitutional rights implicated in a

particular case. *Collins*, ¶ 14. Because a plea agreement induced guilty plea effects a waiver of fundamental state and federal constitutional rights, criminal defendants:

> have a substantive [constitutional due process] right to be treated fairly throughout the plea-bargaining process. A prosecutor must [thus] meet strict and meticulous standards of both promise and performance relating to plea agreements, because a guilty plea resting on an unfulfilled promise in a plea bargain is involuntary. Prosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable.

*Collins*, ¶ 14 (internal punctuation and citations omitted). Consequently, prosecutors must present the State's case at sentencing:

> in a good faith and fair manner that is [neither] clearly intended [n]or likely to undermine the plea agreement, including [any agreed] sentencing recommendation . . . . [The] prosecutor cannot pay mere "lip service" to the agreement by making the agreed sentencing recommendation while presenting the case in a manner intended [or likely] to persuade the court that the sentence recommendation should not be accepted.

*Collins*, ¶ 15 (internal punctuation and citations omitted). Because "there are no hard and fast criteria" that distinguish "when a prosecutor has merely paid lip service to a plea agreement as opposed to . . . fairly present[ing] the State's case," each alleged prosecutorial breach of a plea agreement must be assessed under the unique circumstances of each case. *Collins*, ¶ 15 (citation omitted).

¶9 A prosecutor may "undermine" and thus "breach a plea agreement" by, *inter alia*, "emphasizing negative information about the defendant without fully explaining the justification for the agreed sentencing recommendation." *Collins*, ¶ 16. Unless barred by the express terms of the plea agreement, a prosecutor *may* generally note unflattering information relevant to sentencing in a particular case if "within the scope of information

6

required or authorized by statute" for court consideration at sentencing. *Collins*, ¶ 17. The prosecutor may do so, however, *only if* "the case is presented in a fair manner not likely to undermine the plea agreement by influencing the court to deviate from the sentence recommendation." *Collins*, ¶ 17.

¶10 Applying those fundamental principles here, the prosecutor's request that the District Court honor the plea agreement recommendation was wholly undermined, if not contradicted, by her unnecessary emphasis of Yates' negative criminal history regarding previously dropped or dismissed assault charges and the State's resulting "concern" about that information; her statement of disbelief that she or her colleague had previously approved such an agreement; her failure to provide any favorable explanation or justification in support of the plea agreement recommendation; and her remark that the agreed recommendation would be "a *real gift from the court* if the court goes along with this." (Emphasis added.) The record manifests that all necessary relevant sentencing information was independently available to the court as a matter of record in the charging affidavit supporting the Information and the statutory presentence investigation report to the court. Regardless of its disclaimer of reliance on the prosecutor's comments at sentencing, the essence of the District Court's stated sentencing rationale directly corresponded with the prosecutor's disparaging negative comments and concerns, as amplified in the absence of any proffered State explanation or justification in support of the plea agreement. Whether the court may have independently drawn the same conclusions and thus independently deviated from the plea agreement recommendation is

impossible to know in light of the prosecutor's disparaging comments and failure to offer any positive explanation in support of the plea agreement. The District Court's after-the-fact disavowal of reliance on the prosecutor's statements does not alter that fact. Juxtaposed against her other disparaging remarks and lack of explanation in support of the agreement, the prosecutor's request that the court honor the plea agreement recommendation was mere lip service. We hold that the prosecutor thus materially breached an essential term of the plea agreement.

¶11 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c), of our Internal Operating Rules. The sentence imposed by the District Court in this matter is hereby reversed, and this matter is thus remanded for resentencing subject to § 3-1-804(12), MCA.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

8